**Charles HARDY, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Defendant.**

**No. 01 Civ. 5973(NRB).**

United States District Court, S.D. New York.

Nov. 30, 2001.

Jay B. Kasner, Edward J. Yodowitz, Jill Rennert, Skadden, Arps, Slate, Meagher & Flom, L.L.P., New York City, for defendant.

### MEMORANDUM & ORDER

BUCHWALD, District Judge.

This case is a class action brought by Charles Hardy on behalf of himself and other similarly situated individuals ("plaintiffs") against Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch" or "defendant"). Plaintiffs filed their action in the Supreme Court of New York, County of New York, alleging that defendant had breached its fiduciary duty to its brokerage customers by maintaining positive recommendations on shares of Internet Capital Group, Inc., ("Internet Capital") despite defendant's knowledge that Internet Capital faced serious financial problems. Defendant removed the action to the Southern District of New York pursuant to 15 U.S.C. §§ 77(p)(c) and 78bb(f)(2), and 28 U.S.C. §§ 1331 and 1441. Plain-tiffs now move to remand the case to state court. Defendants have filed a cross-motion to dismiss the case. For the reasons set forth below, we deny plaintiffs' motion to remand the case to state court and grant defendant's motion to dismiss.

### BACKGROUND

Plaintiffs' complaint is premised on the following scenario. Large investment firms like Merrill Lynch have both brokerage and investment banking divisions. In recent years, the traditional separation between the stock analysts, who research companies, provide detailed reports about them, and recommend which companies investors should buy stock in, and the underwriters, who manage debt and equity offerings, has broken down as underwriting of public offerings has become an increasingly important source of revenue for investment firms. Thus, according to the complaint, rather than providing independent analysis, analysts have became integral parts of their firms' attempts to obtain underwriting business. The complaint alleges that this lack of independence deterred analysts from issuing negative stock recommendations. Indeed, according to a recent survey cited in the complaint, less than one-half of one percent of all analyst reports on companies in the Standard & Poor's 500 had sell recommendations. (Complaint, ¶ 26).

Merrill Lynch managed the initial public offering for Internet Capital, which began trading on August 5, 1999. On August 30, 1999, defendant initiated analyst coverage of Internet Capital with a rating of "Near–Term Accumulate/Long–Term Buy." After being issued at $6 per share, Internet Capital's stock appreciated in value until it peaked at $200 per share on January 3, 2000, even though the company had only been in existence for three years and had not made a profit. In December 1999,

defendant underwrote a further $1.12 billion in debt and equity offerings for Internet Capital. As stock prices dropped during 2000 and Internet Capital began to run short of money, defendant did not change its recommendation. On November 9, 2000, defendant lowered its recommendation on Internet Capital to "Near–Term Accumulate/Long–Term Accumulate," a slightly less positive rating. At that time, Internet Capital was trading at $10 per share. When the complaint in this case was filed, the price had dropped to $2 per share, and defendant maintained its "Near–Term Accumulate/Long–Term Accumulate" recommendation.

Plaintiffs filed their complaint in state court on June 22, 2001. They allege that, by reiterating artificially positive recommendations for Internet Capital stock in order to obtain further underwriting business, defendant placed its interest in obtaining lucrative underwriting agreements above its retail customers, to whom plaintiffs claim Merrill Lynch owed a fiduciary duty. Defendant removed the case to federal court on July 2, 2001, on the grounds that the complaint was a covered class action that fell under the removal provisions of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). 15 U.S.C. §§ 78bb(f)(1) and (2). Plaintiffs moved to remand the case to state court, and defendants have cross-moved to dismiss the complaint under SLUSA, which provides for the dismissal of any covered class action brought under state statutory or common law. For the reasons that follow, we dismiss the complaint without prejudice.

## DISCUSSION

### I.  The Passage of SLUSA

Congress passed SLUSA in 1998 in order to close a loophole in the 1995 Private Securities Litigation Reform Act ("PSLRA"). The PSLRA amended the 1933 Securities Act and the 1934 Securities Exchange Act to impose heightened pleading standards for plaintiffs alleging securities fraud in order to deter meritless "strike" suits. The PSLRA requires that plaintiffs plead with particularity any omissions or statements alleged to be misleading, including on what bases they believe there to be an omission and precisely which statements were misleading and why they were misleading. The PSLRA also required that any complaint under Rule 10b–5 allege facts creating a strong inference of scienter. *See* Private Securities Litigation Reform Act, Pub.L. 104–67, 109 Stat. 737 (codified as amended at 15 U.S.C. § 78a et seq).

■ As many plaintiffs attempted to avoid the PSLRA's heightened pleading requirements, there was a large increase in the number of securities claims filed in state courts alleging state law causes of action. Congress passed SLUSA in order to prevent plaintiffs from bringing traditional securities actions in state courts. SLUSA was intended to restore the status quo ante in which virtually all securities suits were filed in federal courts. In effect, SLUSA was designed to close the loophole in the PSLRA that allowed plaintiffs suing in state courts to avoid the latter's heightened pleading requirements. *See* 144 Cong. Rec. H10771 (daily ed. Oct. 13, 1998), available at 1998 WL 712049.

Thus, SLUSA makes classic securities suits brought in state court subject to removal to federal court and immediate dismissal. In doing so, SLUSA provides a definition for the suits to which it applies. The relevant part of SLUSA states:

(1) Class action limitations

No covered class action [1] based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging-

(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

(2) Removal of covered class actions

Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

15 U.S.C. §§ 78bb(f)(1) and (2). Thus, any case that purports to be brought under state law but which, according to SLUSA's definition, is a traditional securities claim is subject to removal and dismissal under SLUSA.

## II. Application of SLUSA to the Complaint

■ The primary issue in this case is whether it is removable under SLUSA. If SLUSA applies, then the removal was proper and the state law claim must be dismissed. If SLUSA does not apply, then the Court must remand the case for lack of federal subject matter jurisdiction.

In order to defeat a motion to remand an action to state court, the removing defendant must show that: (1) the action is a "covered class action" under SLUSA; (2) the action purports to be based on state law; (3) the action involves a "covered security" under SLUSA; and (4) that the defendant misrepresented or omitted a material fact "in connection with" the purchase or sale of such security. *See* 15 U.S.C. §§ 78bb(f)(1) and (2).

The first three requirements are not in dispute. The complaint is a covered class action, as there are common questions of law and fact, and plaintiffs seeks to recover damages on behalf of himself and others. *See* 15 U.S.C. § 78(f)(5)(B). The action clearly purports to be based on state law, as the complaint alleges only breach of fiduciary duty. Similarly, the Internet Capital stock is clearly a covered security. Internet Capital is listed on the Nasdaq exchange, which is specifically enumerated in the statute. *See* 15 U.S.C. § 78bb(f)(5)(E), referencing § 77r(b).

The parties' dispute hinges on the fourth requirement: whether or not the alleged breach of fiduciary duties occurred in connection with the purchase or sale of a

---

1. The term "covered class action" means—

(i) any single lawsuit in which—

(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

(II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or

(ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which—

(I) damages are sought on behalf of more than 50 persons; and

(II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

15 U.S.C. § 78bb(f)(5)(B)

security. Plaintiffs argue that their claim does not deal with the purchase or sale of Internet Capital stock, but only with decisions to hold the stock. Defendant responds by citing the complaint, which states that the plaintiff represents the class that purchased shares of Internet Capital between August 5, 1999, the day after the initial public offering, and the date the complaint was filed. (Complaint, ¶ 54). The defendant argues that, because the complaint does not limit the members of the class to Merrill Lynch customers who purchased their shares before defendant made its recommendations, many of them necessarily purchased their shares in connection with the alleged fraud or misrepresentation.

■ SLUSA does not define "in connection with the purchase or sale" of a covered security. Relying on the presence of identical language in section 10(b) of the Securities Exchange Act of 1934, other courts have looked to the interpretations of section 10(b) for guidance. *See, e.g., Spielman v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2001 WL 1182927 at *2 (S.D.N.Y. October 9, 2001) (collecting cases). *But see Shaw v. Charles Schwab & Co., Inc.*, 128 F.Supp.2d 1270, 1274 (C.D.Cal.2001) (holding that the phrase "in connection with" does not necessarily have the same meaning in SLUSA and section 10(b)). In the Rule 10b–5 context, the Second Circuit has held that the phrase "in connection with" the purchase or sale of a security does not cover the holding of a security as a consequence of a misrepresentation or omission. *Gurary v. Winehouse*, 190 F.3d 37, 46 n. 9 (2d Cir.1999). *See also First Equity Corp. of Florida v. Standard & Poor's Corp.*, 869 F.2d 175, 180 n. 2 (2d Cir.1989); *Abrahamson v. Fleschner*, 568 F.2d 862, 868 (2d Cir.1977) (holding that Rule 10b–5 does not include being induced not to sell). Applying paral-

lel reasoning, courts have held that state law claims of misrepresentation or omission that induce a plaintiff to refrain from selling a stock can proceed consistent with SLUSA. *See Spielman*, 2001 WL 1182927 at *2, *citing Gutierrez v. Deloitte & Touche, L.L.P.*, 147 F.Supp.2d 584, 595 (W.D.Tex.2001). Thus, based on cases decided under section 10(b) and under SLUSA there is significant support for the conclusion that any plaintiffs who held Internet Capital stock as a result of the defendants' alleged misrepresentation or omission, but who did not sell or purchase the stock as a result of the analyst report, have alleged a state law claim that is not removable under SLUSA. *See Lalondriz v. USA Networks, Inc.*, 54 F.Supp.2d 352, 353 (S.D.N.Y.1999).

### III. Application of SLUSA to the Prospective Class

■ While for the reasons just discussed, some potential class members have asserted claims that fall outside traditional federal securities laws, the breadth of the class covered by the complaint brings within its ambit traditional federal securities claims that are thus removable and dismissable under SLUSA. The class pled covers all Merrill Lynch customers who purchased Internet Capital shares between the initial public offering on August 5, 1999 and the date of the filing of the complaint. (Complaint, at ¶ 54). It makes no effort to distinguish between customers who purchased before and after the stock rating allegedly became inaccurate. Thus, some portion of the class purchased stock in reliance on the alleged misstatement, i.e. in connection with the purchase or sale of a security, and thus must have their claims removed and dismissed under SLUSA.

More specifically, there are three potential sub-classes into which the class as alleged in the complaint could be divided.

The first group would be those who purchased Internet Capital shares between August 5 and August 30, 1999, when defendants initiated their coverage of the stock. These customers could not have relied on a statement of any kind from Merrill Lynch in purchasing the stock, and their only potential claim would be that they held their stock as a result of defendant's allegedly inaccurate statements. This claim raises no federal securities issues and could only be a common law claim. It would therefore not be removable under SLUSA. *See Gordon v. Buntrock,* 2000 WL 556763, at *3 (N.D.Ill.2000) (remanding a state law claim on the grounds that the complaint explicitly limited the class to all persons holding shares before any of the alleged misrepresentations took place).

The second class contains those customers who purchased the stock after August 30, 1999, and before the date on which Merrill Lynch's stock recommendation allegedly became a misrepresentation and who continued to hold the stock after the recommendation allegedly became inaccurate. These plaintiffs, too, raise only a state law claim that cannot be removed under SLUSA.

The third class contains those customers who bought their shares after Merrill Lynch's stock recommendation allegedly became inaccurate. These plaintiffs have raised a federal securities claim that is subject to removal and dismissal under SLUSA as they purchased their shares in reliance on an alleged misstatement.

The problem for the class alleged in this complaint is that the complaint makes no attempt to limit its scope to the class permitted in *Gordon.* The Court cannot determine how much, if any, of the potential class alleged by plaintiff brings a claim that could be properly brought in state court without being subject to removal under SLUSA. A further problem is that the complaint does not contain sufficient detail to determine to whether Mr. Hardy, the named plaintiff and prospective class representative, has raised a claim that can avoid removal under SLUSA.

Given the problems with the class as alleged in the complaint, this Court sees three options for how to resolve the present motion: 1) we could divide the class into two parts, one to be remanded to state court and the other to be removed and dismissed under SLUSA; 2) we could remand the entire case to state court for a determination of which class members have properly brought state law claims; or 3) we could deny plaintiffs' motion to remand the complaint and dismiss it under SLUSA, which would permit the plaintiffs to bring a new complaint in state court properly limited to those class members who have state law claims. We opt not to divide the class as pled because the complaint contains too little information to identify which class members have potential state law claims. Next, allowing this case to be remanded would require the state court to determine which potential members of the plaintiff class were subject to removal under SLUSA and which had brought state law claims. This option would undermine the Congressional intent in passing SLUSA, which was to prevent securities claims from being brought in state court.

We are therefore left with the third option, that of denying plaintiffs' motion to remand the case. Having determined that complaint is a covered class action under SLUSA, we are required to dismiss it. *See* 15 U.S.C. § 78bb(f)(1) (stating that "no covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained ...."). Plaintiff, of course, may recommence an action in state court limited to issues of state law.

20

To reiterate, plaintiffs' motion to remand is denied, and defendant's motion to dismiss is granted.

**IT IS SO ORDERED.**