**Daniel F. DACEY, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**MORGAN STANLEY DEAN WITTER & CO., Defendant.**

No. 02CIV.4449(LTS)(THK).

United States District Court, S.D. New York.

May 22, 2003.

Joseph Serino, Jr., William H. Pratt, Kirkland & Ellis, New York City, for Morgan Stanley Dean Witter & Co.

## MEMORANDUM AND ORDER

SWAIN, District Judge.

Plaintiff Daniel Dacey ("Dacey") brings this pututative class action against Defendant Morgan Stanley Dean Witter Co. ("Morgan Stanley"), alleging that Defendant breached certain customer agreements by failing to perform certain duties to its customers in connection with stock purchase recommendations. Defendant has moved to dismiss the complaint as preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLU-SA"). Plaintiff has cross-moved to remand the action to state court. In addition, Plaintiff seeks an award of attorneys' fees, costs and expenses under 28 U.S.C. § 1447(c).

The Court has considered thoroughly all submissions and argument related to this motion. For the following reasons, Defendant's motion to dismiss is granted in part and denied in part and Plaintiff's motion to remand is granted in part and denied in part. Plaintiff's request for attorneys' fees, costs and expenses is denied.

## BACKGROUND

The following allegations of the Complaint are taken as true for purposes of the pending motions. Dacey maintained an account at Dean Witter, through which he purchased stocks recommended by the Dean Witter Technology Equity Research Team. (Complaint ¶ 5.) In connection with the account, Dacey entered into a Client Account Agreement ("Customer Agreement") with Dean Witter which provided that the securities accounts used by customers such as Dacey could be used to purchase, sell or hold securities on either a cash or a margin basis. (*Id.* ¶ 6.) Dean Witter also issued a standard form "Confirmation Agreement" in connection with the trades in the account; the Confirmation Agreement provided that "[a]ll transactions are subject to the rules and customs of the Exchange or Market where executed." (*Id.* ¶ 8.) Plaintiff asserts that the Customer Agreement and the Confirmation Agreement incorporated the rules and customs of the National Association of Securities Dealers ("NASD") and the New York Stock Exchange ("NYSE"). Those rules provide, *inter alia*, that members of the exchange must "observe high standards of commercial honor and just and equitable principles of trade," (NASD Manual & Notices of MembersConduct Rules § 2110), that "communications with the public shall be based on principles of fair dealing and good faith and should provide a sound basis for evaluating facts in regard to any particular security" (*id.,* Conduct Rules § 2210(d)(1)(A)), that "[e]x-aggerated, unwarranted or misleading

statements or claims are prohibited in all public communications ... [and] no member shall, directly or indirectly, publish, circulate or distribute any public communication that the member knows or has reason to know contains any untrue statement of a material fact or is otherwise false or misleading" (*id.*, Conduct Rules § 2210(d)(1)(B)), and further provide that "a member must have a reasonable basis for [a] recommendation [in sales literature]" (*id.* Conduct Rules § 2210(d)(2)(B)(i)).

Dean Witter's Technology Equity Research Team issued analyst reports on technology companies with which Dean Witter had investment banking relationships. (Complaint, ¶ 11.) The Technology analyst reports did not reflect fairly or accurately on the business of certain companies because the analysts were under pressure, due to Defendant's investment banking relationships, to issue favorable reports. (*Id.* ¶¶ 15–18.)

Dacey purchased stock in Sycamore Networks and Redback Networks which had been recommended by Defendant's Technology analysts. (*Id.* ¶ 19.) Defendant's analysts rated Sycamore Networks and Redback Networks highly at the time Dacey purchased shares in the companies and continued to rate the companies highly although the share prices of the companies' stock were steadily declining. (*Id.* ¶¶ 22–30.) At the time Defendant's analysts were recommending Sycamore Networks and Redback Networks to customers with trading accounts, Defendant was underwriting a secondary stock offering in Sycamore Network and an initial public offering in Redback Networks. (*Id.* ¶¶ 21, 28). Defendant overrated the stocks in these companies and encouraged customers to purchase shares at inflated prices. Plaintiff asserts that, after Defendant made billions of dollars in fees as under-

writer for the companies' stock offerings, and after prices had collapsed, Defendant lowered its ratings. (*Id.* ¶ 31.)

Plaintiff asserts a breach of contract claim arising from the foregoing transactions, alleging that Defendant "failed to adhere to the industry regulations and guidelines that it warranted it would abide by, materially breaching the Customer Agreement and Confirmation Agreement." (*Id.* ¶ 43.)

The Complaint defines two plaintiff subclasses, as follows:

PURCHASER CLASS: All customers of [Morgan Stanley] who (i) purchased shares of any of the companies identified on Exhibit A from Morgan Stanley, (ii) held those shares after the date on which Morgan Stanley issued a postpurchase analyst report that contained a positive recommendation, and (iii) were damaged thereby.

(*Id.* ¶ 32.), and

HOLDER CLASS. All customers of [Morgan Stanley] who (i) purchased shares of any of the companies identified on Exhibit A from [Morgan Stanley] (ii) held those shares after the date on which [Morgan Stanley] issued a postpurchase analyst report that contained a positive recommendation, and (iii) were damaged thereby.

(*Id.*)

### DISCUSSION

Defendant argues that the Complaint should be dismissed because Plaintiff's state law contract claim is barred by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), Pub L. No. 105–353, 112 Stat. 3227 (codified at 15 U.S.C. §§ 77p, 78bb(f)). Plaintiff contends that SLUSA does not bar suit and seeks an order remanding the action.

SLUSA makes federal courts the exclusive venue of, and federal law the exclusive source of remedy for, certain class actions alleging securities claims.[1] SLUSA provides in pertinent part:

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C.A. § 78bb(f)(1) (West 2002). SLUSA thus provides for federal preemption of any claim meeting four requirements. To be preempted, a lawsuit must be: (1) a "covered class action;" (2) based on state law; (3) in which the plaintiff alleges either a "misrepresentation or omission of a material fact" or "any manipulative or deceptive device or contrivance;" (4) "in connection with the purchase or sale of a covered security." *Id.; see also MDCM Holdings, Inc. v. Credit Suisse First Boston Corporation*, 216 F.Supp.2d 251, 256 (S.D.N.Y.2002) (citations omitted).

 The parties agree that the instant action is a covered class action based on state law, but dispute whether Plaintiff alleges a material misrepresentation or omission of material fact or any manipulative or deceptive device or contrivance in connection with the purchase or sale of a security. The Court finds that, because Plaintiff alleges such misrepresentations or omissions, Plaintiff's action is preempted in part, as explained below.

In deciding whether SLUSA preempts a lawsuit, courts examine what the "private party [is] alleging." 15 U.S.C. § 78bb(f)(1) (emphasis added); *see also MDCM Holdings, Inc. v. Credit Suisse First Boston Corporation*, 216 F.Supp.2d at 257. Dacey's single breach of contract count incorporates by reference all of the preceding allegations in the Complaint. (Complaint, ¶ 38.) In paragraph 34 of the Complaint, Plaintiff identifies questions of law or fact allegedly common to the classes. These issues include whether "defendant breached duties owed to plaintiff ... pursuant to the Customer and Confirmation Agreements"; whether "defendant's research analyst reports [were] prepared with the level of care required by its Customer and Confirmation Agreements," whether "defendant's research reports properly reflect[ed] the financial condition and future prospects for the companies covered," and whether defendant failed to deal fairly with the plaintiff, in "good faith." (*See id.* ¶ 34.) Plaintiff further asserts that Defendant breached the Customer and Confirmation Agreements by not dealing with Plaintiff and the putative "classes fairly and objectively, with high standards of commercial honor, in good faith, and on an equitable basis in connection with all transactions with its customers ... [and that] [d]efendant was further obligated to reveal all material information concerning the companies it recommended to its customers."(Complaint, ¶ 42.)

Plaintiff argues that the Complaint sounds purely in contract, and contends that it is on that basis distinguishable from cases cited by Defendant where courts found that SLUSA preempted actions asserting state law contract claims because those actions included fraud claims. *See*

---

1. "SLUSA provides that all cases falling within its purview are both removable to federal court and subject to automatic dismissal."

*Korinsky v. Salomon Smith Barney Inc.*, 01 Civ. 6085, 2002 WL 27775 (S.D.N.Y. Jan.10, 2002).

*Araujo v. John Hancock Life Ins. Co.*, 206 F.Supp.2d 377, 384–85 (E.D.N.Y.2002) (amended complaint deleted original complaint's fraud claims); *Lasley v. New England Variable Life Ins. Co.*, 126 F.Supp.2d 1236, 1237 (N.D.Cal.1999) (complaint included count for fraud and deceit); *Prager v. Knight/Trimark Group, Inc.*, 124 F.Supp.2d 229, 235 (D.N.J.2000) (allegations from fraud count incorporated by reference in breach of contract count); *In re Lutheran Bhd. Variable Ins. Products Co. Sales Practices Litig.*, 105 F.Supp.2d 1037, 1041–42 (D.Minn.2000) (complaint also alleged fraud); *Hines v. ESC Strategic Funds, Inc.*, No. 3:99–0530, 1999 WL 1705503 (M.D.Tenn. Sept. 17, 1999) (allegations of fraud and breach of implied contract created by fraudulent misrepresentations).

Here, although the Complaint asserts only one count of breach of contract, its operative allegations plainly focus on misrepresentations and other alleged breaches of disclosure duties. Plaintiff alleges that Defendant "was ... obligated to reveal all material information concerning the companies it recommended to its customers," (Complaint, ¶ 42), that it failed to do so (*id.*), and that Defendant therefore breached contractual duties to abide by rules of conduct prohibiting, *inter alia*, misleading claims and statements and the omission of material facts or qualifications, and requiring a reasonable basis for recommendations. (*See id.* ¶ 9.) The specific factual elements of the Complaint allege misrepresentations by Defendant's analysts regarding the value of Sycamore Network and Redback Networks. For example, Plaintiff alleges that, despite the fact that Sycamore Network stock was steadily declining, Defendant rated the stock highly. (Complaint, ¶ 24.) Plaintiff also alleges that Defendant rated Redback Networks highly, even though Redback Networks stock was also declining (*id.* ¶¶ 28–30), and

that Defendant in fact "overrated each stock [identified in the Complaint], set unrealistic price targets and encouraged ... customers to purchase shares at inflated prices" (*id.* ¶ 31).

In the context of securities fraud, a federal cause of action for misrepresentation or omission is asserted "where a plaintiff alleges a misrepresentation 'concerning the value of the securities ... sold or the consideration received in return.'" *Spielman v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 01 Civ. 3013, 2001 WL 1182927, *3 (S.D.N.Y. Oct.9, 2001) (quoting *Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 108 (2d Cir.1986)). This standard should be read "flexibly, not technically and restrictively." *Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 10 n. 7, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971) (interpreting the requirement of fraud in connection with the sale of a security under Section 10(b) of the Securities Exchange Act of 1934).

Reviewing the allegations of the Complaint in their entirety, the Court finds that Plaintiff's action concerns an alleged scheme by Defendant to induce persons to buy or hold securities by issuing artificially positive ratings on the stock of certain companies, and that the cause of action asserted thus concerns material misrepresentations or omissions of fact regarding the value of the securities. *See Spielman*, 2001 WL 1182927 at *3.

The Court now turns to the question of whether the Complaint alleges such misrepresentations or omissions in connection with the purchase or sale of covered securities. As noted above, the Complaint identifies two putative subclasses—a "purchaser" class and a "holder" class. Plaintiff argues that, even if the claims asserted on behalf of the "purchaser" class are preempted by SLUSA, the "holder" class's

state claims do not involve fraud in connection with the purchase or sale of a security and thus survive SLUSA preemption.

*Whether SLUSA Preempts the Claims of Holder Class*

 Courts have held that state law claims that plaintiffs were induced, by misrepresentations or omissions, to hold a stock can proceed "consistent with SLUSA." *See Hardy v. Merrill Lynch Pierce Fenner & Smith,* 189 F.Supp.2d 14, 18 (S.D.N.Y.2001) (citing *Spielman v. Merrill Lynch Pierce Fenner & Smith Inc.,* 2001 WL 1182927 at * 2); *see also Gordon v. Buntrock,* No. 00 CV 303, 2000 WL 556763 at *3 (N.D.Ill. April 28, 2000) (remanding claim on the basis that the complaint explicitly limited the class to persons holding shares before alleged misrepresentations occurred). Moreover, in the context of claims asserted under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, "[i]t is well established that mere retention of securities in reliance on material misrepresentations or omissions does not form the basis for a § 10(b) or Rule 10b–5 claim." *See Lowe v. Salomon Smith Barney,* 206 F.Supp.2d 442, 445–446 (W.D.N.Y.2002) (collecting cases).

The Holder Class is identified in the Complaint as: "[a]ll customers of Dean Witter who (i) purchased shares of any of the companies identified on Exhibit A from Dean Witter, (ii) held those shares after the date on which Dean Witter issued a post-purchase analyst report that contained a positive recommendation and (iii) were damaged thereby." (Complaint, ¶ 32.)

Defendant contends that this subclass definition does not distinguish completely between customers purchasing stock before and those who purchased after Defen-

dant's analysts issued their allegedly inaccurate ratings. (*See* Defendant's Reply Memorandum, at 4.) Because some members of the Holder Class could have purchased shares "in reliance on the alleged misstatements,"[2] Defendant argues, the claims of the Holder Class are preempted by SLUSA in their entirety. Both parties focus in this connection on *Gordon v. Buntrock,* where an Illinois district court held that SLUSA did not preempt the claims of a class of investors who had purchased securities before the defendant made misrepresentations, where the complaint specifically excluded "injury resulting from the purchase or sale of securities." *Gordon,* 2000 WL 556763 at *3. In *Hardy,* a decision from this District, the complaint described a single potential class consisting of the defendant's "customers who purchased before and after the stock rating allegedly became inaccurate." *Hardy,* at *18. The *Hardy* Court dismissed that complaint on the ground that it was impossible to distinguish mere holders from purchasers on the basis of the class definition in the complaint, but gave the plaintiffs leave to "recommence an action in state court limited to issues of state law." *Id.* at 19.

Here, the Complaint purports to separate purchasers and holders into two classes. The Holder Class consists of persons holding the "shares *after* the date on which Dean Witter issued a *post-purchase* analyst report ... and were damaged thereby." (Complaint, ¶ 32 (emphasis added)). Although this definition could conceivably be read to include holders who purchased on the basis of a faulty report and managed to hold through the issuance of another, the Court finds that the better reading excludes such holders, and encompasses only those holders whose purchases preceded the issuance of *any* relevant re-

---

2. *Id.,* quoting *Hardy v. Merrill Lynch Pierce* *Fenner & Smith,* 189 F.Supp.2d at 18.

port that is the subject of the misrepresentation claims. Thus construed, the claims of the "Holder Class" do not fall within the scope of SLUSA preemption because they do not arise from the purchase or sale of a covered security, and the claims asserted by the Holder Class will therefore be remanded to state court to that extent. Defendant's motion to dismiss the remaining elements of the Complaint as preempted is granted.

*Attorneys' Fees*

 Plaintiff asserts that he is entitled to an award of attorneys' fees, costs and expenses incurred in connection with Defendant's removal of this case. Under 28 U.S.C. § 1447(c), an order remanding a case to state court "may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal." 28 U.S.C.A. § 1447(c) (West 2002). The Court has broad discretion in determining whether to award costs and attorney fees under section 1447(c). *See Morgan Guaranty Trust Co. of New York v. Republic of Palau,* 971 F.2d 917, 923–24 (2d Cir.1992). In making this determination, courts apply a test of "overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties." *Id.* at 924. Plaintiff contends that Defendant's removal was wrong as a matter of law. The Court, having granted, in part, Defendants' motion to dismiss, the relevant factors militate against any award. Accordingly, Plaintiff's request for attorneys' fees, costs and expenses is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint as preempted by SLUSA is granted except to the extent the claims of the Holder Class are asserted on behalf of persons who purchased affected securities prior to the issuance of any of the reports complained of, held the securities following the issuance of one or more such reports, and were allegedly damaged thereby. The action, insofar as it asserts claims on behalf of such Holder Class members is hereby remanded to state court. The pending motions, including Plaintiff's request for attorneys' fees, costs and expenses, are denied in all other respects.

IT IS SO ORDERED.