Bruce E. ZOREN, on behalf of himself
and all others similarly situated,
Plaintiff,

v.

GENESIS ENERGY, L.P., Genesis Energy, LLC, John P. Von Berg, Mark J. Gorman, A. Richard Janiak, Michael A. Peak, Herbert I. Goodman, J. Conley Stone and Salomon Smith Barney, Inc., Defendants.

No. CIV.A.00–1005–SLR.

United States District Court,
D. Delaware.

March 27, 2002.

Norman M. Monhait, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, Delaware, Greenfield & Goodman, Paoli, Pennsylvania (Richard D. Greenfield, Marguerite R. Goodman, of counsel), Francis J. Farina, Davon, PA, for plaintiff.

Jesse A. Finkelstein, Anne C. Foster, Richards, Layton & Finger, Wilmington,

Delaware (Cravath Swaine & Moore, of counsel), New York, New York, for defendants.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

### I. INTRODUCTION

Before the court are motions in a class action securities case originally brought in the Delaware Court of Chancery and subsequently removed under 28 U.S.C. § 1441 and 1446(b) on the basis of an alleged application of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA" or the "Act"), 15 U.S.C. § 78bb. Defendants Genesis Energy, L.P. ("Genesis"), Genesis Energy LLC, John P. Von Berg, Mark J. Gorman, A. Richard Janiak, Michael A. Peak, Herbert I. Goodman, J. Conley Stone and Salomon Smith Barney, Inc. (collectively "defendants"), move for dismissal of the amended complaint based upon the Act's preemption provision and plaintiff, Bruce E. Zoren's ("Zoren"), inability to state a claim under Delaware law. Zoren moves to remand to state court, arguing the Act's inapplicability or, in the alternative, the application of its "savings" provisions, 15 U.S.C. § 78bb(f)(3)(A).

### II. FACTS

The material facts are not substantially in dispute. Zoren and other class members own units of defendant Genesis, a Delaware limited partnership engaged in the purchase and sale of crude oil. The assets of Genesis are owned and operated through Genesis Crude Oil, L.P., an operating limited partnership ("Operating Partnership"), while defendant Genesis Energy, LLC serves as the General Partner of Genesis and the Operating Partnership. (D.I. 1 ¶ 2(b)(c)). Zoren alleges that since its formation in 1996, Genesis has been controlled by defendant Salomon Smith Barney, Inc. ("SSB"), a broker and dealer in securities. (*Id.* ¶ 11)

Genesis units were initially offered to the public in 1996, with SSB serving as lead underwriter. (*Id.*) This Initial Public Offering ("IPO") saw the sale of 8,625,000 units and raised $163 million, used primarily to purchase certain combined operations of other companies and contribute revenue to the Operating Partnership. (*Id.* ¶ 28) By mid–1998 revenues were down and Genesis appeared unable to meet its common unit obligation. (*Id.* ¶ 36) A Second Public Offering ("SPO") occurred in 1998, with SSB again serving as lead underwriter. (*Id.* ¶ 42) Similar to the IPO, 8,628,000 shares were offered.

Notwithstanding these public offerings, revenues further declined by the end of 1999. (*Id.* ¶ 56) In May 2000 Genesis announced a proposed financial restructuring, unanimously approved by its board of directors based upon the recommendation of a "special committee." (*Id.* ¶ 56–58) The restructuring was likewise supported by a fairness opinion from Simmons & Company International ("Simmons"), a financial advisor. The restructuring was subject to approval by holders of a majority of Genesis units. (*Id.* ¶ 58) In October 2000 Genesis mailed unitholders three proxy statements to vote on the proposed restructuring, which was approved in December 2000. (*Id.* ¶ 68) It is these three events-the IPO, SPO and restructuring-that form the basis of Zoren's complaint.

### III. PROCEDURAL HISTORY

Zoren filed his original complaint in June 2000 in the Delaware Court of Chancery, alleging that the proposed restructuring unfairly benefitted Genesis and SSB to the detriment of unitholders. (D.I. 1, Ex. A ¶ 49–58) Zoren charged defendants with responsibility for a steadily declining revenue stream and, in turn, a declining unit value and the inability of Genesis to fully fund its minimum quarterly distribu-

tion obligation. (*Id.*) In claiming that defendants breached fiduciary and contractual duties under Delaware law, Zoren did not initially allege fraud, misrepresentation, deception or the like. (*Id.*)

Zoren filed his amended complaint in November 2000, only weeks after defendants mailed unitholders the proxy statement seeking approval to restructure. The amended complaint continues to assert breaches of fiduciary and contractual obligations, but differs substantially from the initial pleading in defendants' motives for the IPO, SPO and reorganization. While the original pleading is premised upon "self-dealing and unjust enrichment" (*Id.* ¶ 51), the amended complaint alleges a long-standing conspiracy to defraud and deceive unitholders.

Specifically, the amended complaint for the first time alleges that the "IPO prospectus was materially false and misleading" in that it "failed to disclose" at least a dozen material facts. (D.I. 1, Ex. A ¶ 30) Similarly, Zoren alleges "[t]he Secondary Public Offering Prospectus was materially false and misleading in numerous ways, including each and every count of the (12) subparagraphs set forth in paragraph 30 above." (*Id.* ¶ 43) Rather than disclose this information, Zoren alleges "SSB enlisted its financial analysts in an effort to deceive the public." (*Id.* ¶ 45) Zoren claims SSB attempted "[t]o disguise the inflation of Genesis' market price" and its "subsequent equity research analyses of Genesis continued this charade." (*Id.* ¶ 49 & 50)

Aside from fraud and deceit in the IPO and SPO, Zoren alleges similar conduct in the restructuring. Specifically, Zoren claims a defendant director's "characterization of the proposed reorganization is materially false and misleading." (*Id.* ¶ 62) He further claims the proxy statements "falsely" described special committee members as "disinterested" and that

the committee and Simmons' independence "is a total sham." (*Id.* ¶ 63, 64) The proxy statements are further described as "blatant attempt[s] by SSB and Genesis to mislead unitholders into believing that Simmons' work was adequate." (*Id.* ¶ 66)

In describing a breach of duty of candor, Zoren alleges each of the three restructuring proxy statements "is materially false and misleading and each is intended to mislead the unitholders into approving a transaction which is not in their best interest." (*Id.* ¶ 68) Zoren further alleges that the proxy statements contain "many misrepresentations or omissions of fact which are material to any decision by the unitholders on how to vote with respect to the Reorganization." (*Id.* ¶ 74) Thirteen alleged "misrepresentations and omissions" are detailed. (*Id.*)

As with his other state law claim, Zoren's breach of fiduciary duty allegations incorporate the charges of fraud and deceit "detailed at length above" and assert the proxy statements contain "misrepresentations or omissions of fact which are material to any decision by the shareholders on how to vote with respect to the proposed transaction." (*Id.* ¶ 83) Although his amended pleading adds this pattern of fraud and deceit, Zoren chose to continue his demand for compensation "for all losses and damages" caused by defendants' conduct. (*Id.* p. 37)

## IV. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all

reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." (*Id.*) Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The moving party has the burden of persuasion. *See Kehr Packages, Inc., v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991).

■ Relevant here, removal jurisdiction is governed by 28 U.S.C. § 1441(a). The statute is strictly construed, requiring remand to state court if any doubt exists over whether removal was proper. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 104, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). The party seeking removal bears the burden to establish federal jurisdiction. *Steel Valley Auth. v. Union Switch & Signal Div. Am. Standard, Inc.,* 809 F.2d 1006 (3d Cir.1987). *see also Coardes v. Chrysler Corp.,* 785 F.Supp. 480 (D.Del. 1992).

■ The existence of a federal question rests upon the allegations of a "well-pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). A plaintiff, therefore, is described as the "master of the complaint" and a defendant may not remove a state law claim, even on federal preemption grounds, if the plaintiff pleads only state law claims. *Id.* The doctrine of "complete preemption," however, stands as an exception to the well-pleaded complaint rule. It holds that "once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* at 393, 107 S.Ct. 2425, *citing Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust*

*for Southern Calif.,* 463 U.S. 1, 24, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). With these principles in mind, the court accepts as true all allegations in Zoren's amended complaint to decide whether defendants have established that the case was properly removed and, therefore, is preempted under SLUSA.

## V. DISCUSSION

■ In 1995, Congress enacted the Private Securities Litigation Reform Act ("Reform Act") in response to a perceived harm to markets from frivolous private securities lawsuits. H.R. Conf. Rep. No. 104–369, at 31–32 (1995). The Reform Act sought to deter these "strike suits" by imposing more stringent procedural and substantive requirements for private securities actions in federal courts. *See Gibson v. PS Group Holdings, Inc.,* 2000 WL 777818, **2–3 (S.D.Cal. March 8, 2000). In response, plaintiffs counsel recognized state laws required no such heightened standards and filed a record number of actions in state courts. H.R. Conf. Rep. No. 105–803, p. 14–15 (1998); *see also Lander v. Hartford Life,* 251 F.3d 101, 108 (2d Cir.2001). To close this "loophole" Congress enacted SLUSA, which designates the federal courts as the exclusive venue for nearly all such claims. *See Green v. Ameritrade Inc.,* 279 F.3d 590 (8th Cir.2002). Under its preemption provision, SLUSA permits removal and then dismissal of certain securities class actions:

(1) Class Action Limitations: no covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by a private party alleging-

(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).

The Act, therefore, mandates removal and then dismissal of any (1) covered class action; (2) based on state law; (3) alleging a misrepresentation or omission of a material fact or act of deception; (4) in connection with the purchase or sale of a covered security. *See Prager v. Knight/Trimark Group, Inc.,* 124 F.Supp.2d 229, 231–33 (D.N.J.2000). In enacting SLUSA, Congress evinced a clear intent toward broad application of the Act. *See Gibson v. PS Group Holdings, Inc.,* 2000 WL 777818 (S.D.Cal. March 8, 2000); *see also Bertram v. Terayon Commun.,* 2001 WL 514358 (C.D.Cal. March 27, 2001).

Although exceptions exist, they are limited to:

(I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or

(II) any recommendation, position, or other communication with respect to the sale of any issuer that-

(aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and

(bb) **concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.**

15 U.S.C. § 78bb(f)(3)(A) (emphasis added). Absent application of a savings provision, a federal court loses subject matter jurisdiction and must dismiss the preempted claims. *See Prager,* 124 F.Supp.2d at 231; *see also Burns v. Prudential Sec.,* 116 F.Supp.2d 917 (N.D.Ohio 2000).

As applied here, Zoren concedes that nearly all elements of SLUSA are met, disputing only that the fraud, misrepresentation and deception was "in connection with the purchase or sale of a covered security." (D.I. 9 at 8) In this regard, SLUSA compels preemption merely if the "private party is alleging ... a misrepresentation or omission of a material fact in connection with" such a transaction. 15 U.S.C § 78bb(f)(1). Although Zoren was the master of his complaint, the court may not ignore his allegations nor Congress' intent to broadly regulate the securities arena. *See Superintendent of Ins.v. Bankers Life & Cas. Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971) (holding that allegations of fraud "in connection with" the purchase or sale of securities must be interpreted "flexibly, not technically and restrictively.").

Under this law, there is no doubt that Zoren repeatedly alleges fraud, misrepresentation and the like in the public offerings. Indeed, he clearly states that "[t]he IPO prospectus was materially false and misleading in numerous ways," including a dozen material facts defendants "failed to disclose" to the public. (D.I. 1, Ex. B ¶ 30) The same can be said for the SPO prospectus, described as "materially false and misleading in numerous ways, including each and every one of the twelve subparagraphs set forth in paragraph 30 above." (*Id.* ¶ 43) Zoren further alleges that, "contemporaneously with the Second Offering," SSB enlisted its financial analysts in an effort to deceive the public and sought "[t]o disguise the inflation of Genesis' market price" and used its "subsequent equity research analyses" to continue the "charade". (*Id.* ¶¶ 45–46; 49–50)

By voluntarily spelling out that the IPO and SPO included misrepresentation, fraud

and deception in the sale of a covered security, Zoren has placed himself squarely within the Act's parameters. That conclusion is supported even by those cases Zoren considers persuasive or "on all fours with this one." (D.I. 9 p. 13) *citing Klein v. Southwest Gas Corp.*, No. 99–1004–IEG (CGA) (S.D.Cal. August 3, 1999) (finding SLUSA applicable to similar allegations, but remanding under its savings provision); *see also Gibson v. PS Group Holdings, Inc.*, 2000 WL 777818 (S.D.Cal. March 8, 2000) (court found SLUSA applied despite plaintiff's efforts at artful pleading). Any attempt to term the allegations simply as "background facts" is ineffective. *See Korsinsky v. Salomon Smith Barney, Inc.*, 2002 WL 27775 (S.D.N.Y. Jan.10, 2002) (rejecting such an argument on nearly identical allegations against SSB).

Although Zoren employs creative arguments, they are hardly persuasive. For example, he attempts to avoid the Act because his pleading "contains no claim or request for relief based on the allegations concerning the Prospectus or the second offering." (D.I. 9 at 2) Yet that assertion contradicts his actual prayer for relief, which seeks "losses and damages … as a result of [all] the acts and transactions complained of herein." (D.I. 1, Ex. B at 37 subparagraph e) While Zoren attempts to subsequently withdraw his claim for IPO and SPO "damages," federal jurisdiction is assessed at the time of removal, not briefing. *See Albright v. RJ Reynolds Tobacco Co.*, 531 F.2d 132 (3d Cir.1976).

■ Along these lines, Zoren suggests he "seeks equitable relief" only and thus avoids the Act. (D.I. 22 at 2) However, courts interpreting SLUSA assess preemption based upon whether the complaint read as a whole sets out fraudulent misconduct, regardless of the prayer for relief. *See e.g. Gibson v. PS Group Holdings, Inc.*, 2000 WL 777818 (finding that "[a]

rule allowing a class action plaintiff to defeat removal by filing an amended complaint that omits a prayer for damages would eviscerate" the Act); *see also Bertram v. Terayon Communications Systems, Inc.*, 2001 WL 514358 (C.D.Cal. March 27, 2001) (adopting *Gibson*'s reasoning and finding dubious plaintiff's position, like Zoren's, that an allegation of "damages" sought only equitable relief).

■ Moreover, any effort to fit the public offering claims into a savings provision is likewise unconvincing. By its plain language, the first "carve-out" provision applies only when the purchase or sale is "exclusively from or to" existing holders of securities. 15 U.S.C. § 78bb(f)(3)(A)(ii)(I). Because the IPO and SPO unquestionably involved a purchase or sale to prospective unitholders, not simply those who already owned Genesis units, the exception cannot apply. This interpretation comports with Delaware law. *See Anadarko Petroleum Corp. v. Panhandle Eastern Corp.*, 545 A.2d 1171 (Del.1988) (no fiduciary duty is owed to prospective investors).

The second exception is similarly unavailable. Although the IPO and SPO communications were arguably made to "holders of [defendants'] equity securities," they did not concern decisions of such equity holders "with respect to voting their securities and acting in response to a tender or exchange offer, or exercising 'dissenters' or appraisal rights." 15 U.S.C. § 78bb(f)(3)(A)(ii)(II)(bb). Rather, defendants allegedly sold units to raise revenue to benefit SSB. Consequently, because Zoren's allegations related to the IPO and SPO are clearly "in connection with the purchase or sale of a covered security" and because no savings provision applies, those claims are preempted and, therefore, dismissed.

Allegations over the financial restructuring are not as easily resolved. Unlike the

public offerings, the restructuring by itself did not allegedly involve fraud "in connection with the purchase or sale" of securities. 15 U.S.C. § 78bb(f)(1). Instead, Zoren alleges a long-standing "plan and scheme" to benefit SSB through financial reorganization. (D.I. 1, Ex. B ¶ 13(b)(i)). Yet by choosing to tie the restructuring and public offering allegations so closely together, Zoren cannot claim the reorganization charges are truly independent of the earlier sales of securities. This pattern of fraud, culminating in the restructuring, satisfies SLUSA and results in dismissal of all claims.

SLUSA does not define the phrase "in connection with the purchase or sale" of a covered security. Since the phrase mirrors language in Section 10(b) of the Securities Exchange Act of 1934, which SLUSA amended, courts routinely look to the law under the 1934 Act to interpret SLUSA's comparable requirement. *See McCullagh v. Merrill Lynch & Co.*, 2002 WL 362774 (S.D.N.Y. March 6, 2002); *see also Spielman v. Merrill Lynch*, 2001 WL 1182927 (S.D.N.Y. Oct.9, 2001); *Hardy v. Merrill Lynch*, 2001 WL 1524471 (S.D.N.Y. Nov.30, 2001); *Green v. Ameritrade, Inc.*, 120 F.Supp.2d 795 (D.Neb.2000). Courts have found that an allegation of an "unitary scheme of fraud" which began before the "purchase or sale" of securities and continued afterward may nevertheless satisfy the "in connections with" requirement. *See e.g. Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1046 (11th Cir.1986). Courts interpreting SLUSA have agreed. *See Shae v. Claflin*, 2001 WL 548567 (N.D.Cal. May 21, 2001) (finding "fraud related to the purchase and holding of a security may satisfy [SLUSA's] 'in connection with' requirement where the plaintiff alleges an 'unitary scheme of fraud' which began before a stock purchase and continued afterward"); *see also Gordon v. Buntrock*, 2000 WL 556763 (N.D.Ill. April 28, 2000); *Prager*, 124 F.Supp.2d at 229 (finding SLUSA applicable because of a "pattern and practice of misrepresentation and intent to deceive" which "pervade[d] the complaint").

▮ To this end, the amended complaint unquestionably places the restructuring in the setting of an ongoing "plan and scheme" to defraud and deceive. (D.I. 1, Ex. B ¶ 13(b)(i)). The effort allegedly began with Genesis' formation, before the IPO, when SSB's predecessor and friendly companies conspired "to unload much of their investment therein profitably to an unsuspecting public." (*Id.* ¶ 18) The plan was furthered by the November 1996 IPO Zoren alleges failed to disclose twelve events designed or known to benefit defendants, most or all occurring before shares were initially sold to the public. (*Id.* ¶ 30) The improprieties allegedly continued shortly thereafter when SSB was rewarded with "guaranteed" and other fees at an escalating return rate "that appears to have been higher than rates paid to independent financial institutions for similar credit." (*Id.* ¶ 31)

The scheme was advanced by the "false and misleading" 1998 SPO, which Zoren likewise claims failed to disclose the twelve steps defendants took to benefit themselves. (*Id.* ¶ 43) Although they knew internally that a declining position meant "the distribution was too high and unsupportable," defendants allegedly "enlisted its financial analysts in an effort to deceive the public." (*Id.* ¶ 45) One month after the SPO the analysts authored a purportedly misleading report "to downplay the importance of Genesis' assets to its future prospects." (*Id.* ¶ 46–48) An analyst is then alleged to have "continued this charade" in September and November of 1999 with reports containing a bogus performance rating. (*Id.* ¶ 49–50) Similar misleading analyst reports were allegedly "issued over the next six months." (*Id.* ¶ 51)

Prior to the May 2000 restructuring announcement, defendants appointed an independent "special committee" to review the restructuring. (*Id.* ¶ 63) The committee, in turn, retained Simmons as its financial advisor to offer a "fairness opinion" for inclusion in the proxy statements. In this regard, Zoren alleges "[t]he purported independence of the special committee and its advisor is a total sham." (*Id.* ¶ 64) He charges "Simmons is beholden to SSB by virtue" of an earlier lucrative relationship, which led Simmons to remain silent about a restructuring it knew unfairly benefitted SSB. (*Id.*)

The board's unanimous approval of the proposed restructuring was announced in May 2000. (*Id.* ¶ 58) Zoren claims in the following months defendants drafted three proxy statements, each of which is supposedly "materially false and misleading" in a variety of ways. (*Id.* ¶ 68) There is perhaps no better illustration of a long-running scheme than the specific allegations of a misleading proxy, where Zoren details thirteen separate and independent steps defendants purportedly took, over several years, to deceive the public. (*Id.* ¶ 74) Indeed, at the conclusion of those allegations Zoren agrees that the proposed restructuring is merely "a continuation of the self-dealing and unjust enrichment by SSB which has occurred throughout the existence of the Partnership." (*Id.* ¶ 75)

Under the weight of his own allegations, it is clear that Zoren alleges a "unitary scheme of fraud" that began before, and continued after, the sale of units to the public. Rather than standing alone, the restructuring allegations merely concern the final step in a continuing plan to deceive. Another court, ruling on a similar motion on similar facts, likewise found the

restructuring allegations to "relate back" to the IPO and SPO claims and be so intertwined as to make SLUSA applicable. *Dollinger v. Salomon Smith Barney, Inc.,* Civ. No. 1:00CV 5607(JAP) (D.N.J. March 7, 2001); *see also Prager,* 124 F.Supp.2d at 229 (refusing to separate a plaintiff's claims because of the pervasive allegations of fraud). Accordingly, Zoren's clear and repeated allegations of an ongoing fraud satisfy the "in connection with" requirement and make SLUSA applicable. Because no savings provisions apply, the claims were properly removed[1] and the amended complaint is dismissed.

## CONCLUSION

For the reasons stated, defendants' motion to dismiss is granted and plaintiff's motion to remand is denied. An appropriate order shall issue.

---

1. No federal jurisdiction existed over the original complaint, as that pleading did not allege misrepresentation or omissions in connection with the purchase or sale of a covered securi-ty. Grounds for removal arose with the filing of the amended complaint, which defendants timely removed to federal court.