**Bruce E. ZOREN, On Behalf of Himself and All Others Similarly Situated, Plaintiffs,**

v.

**GENESIS ENERGY, L.P., Genesis Energy, LLC, John P. Von Berg, Mark J. Gorman, A. Richard Janiak, Michael A. Peak, Herbert I. Goodman, J. Conley Stone, and Salomon Smith Barney, Inc., Defendants.**

**C.A. No. 19694.**

Court of Chancery of Delaware, New Castle County.

Submitted: June 13, 2003.
Decided: July 28, 2003.

Norman M. Monhait, Herbert W. Mondros, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, Delaware; Richard D. Greenfield, and Marguerite R. Goodman, Greenfield & Goodman LLC, Royal Oak, Maryland; Francis J. Farina, Devon, Pennsylvania, for the Plaintiffs.

Jesse A. Finkelstein, Anne C. Foster, Richards, Layton & Finger, Wilmington, Delaware; Cravath Swaine & Moore, New York, New York, for Defendants Genesis Energy, LLC, John P. von Berg, Mark J. Gorman, A. Richard Janiak, Michael A. Peak, and Salomon Smith Barney, Inc.

James L. Holzman, Paul A. Fioravanti, Jr., Prickett Jones & Elliott, Wilmington, Delaware; Charles W. Schwartz, Vinson & Elkins LLP, Houston, Texas, for Defendants Herbert I. Goodman and J. Conley Stone.

## OPINION AND ORDER

LAMB, Vice Chancellor.

### I.

On May 10, 2000, Genesis Energy, L.P. ("Genesis" or the "Partnership") announced that, based on the recommendation of a special committee, the general partner and its board of directors had approved a proposal to restructure the

Partnership's finances (the "Restructuring"). On December 7, 2000, a majority of the public common unitholders of Genesis voted to approve the Restructuring, which was completed shortly thereafter. .

This action began on June 7, 2000 when Bruce E. Zoren, a public unitholder, filed a proposed class action complaint against Genesis, Genesis's general partner, the members of the general partner's board of directors, and Salomon Smith Barney, Inc. ("Salomon"). That complaint (the "First Chancery Action") asked for an injunction to prevent the Restructuring, but Zoren never pressed an injunction motion. Instead, he filed and served an Amended Complaint on November 15, 2000, after the proxy material became available, alleging that Salomon committed numerous misrepresentations and omissions of material fact in connection with the 1996 and 1998 initial and secondary public offerings to investors of Genesis units. Because the Amended Complaint alleged factual matters that could support a claim under the federal securities laws, the action was removed to the U.S. District Court for the District of Delaware.[1] In that court, the defendants filed a motion to dismiss on December 7, 2000, and Zoren cross-moved for an order remanding the action to the state court. On March 27, 2002, the District Court granted the defendants' motion to dismiss and denied Zoren's motion to remand.[2] Thereafter, the District Court denied Zoren's motion to alter or amend the judgment.[3]

On June 11, 2002, Zoren filed a new case in this court (the "Second Chancery Action").[4] In response to the defendants'

---

1. Because Zoren's Amended Complaint in the First Chancery Action purported to assert a "covered class action" within the meaning of 15 U.S.C. § 78bb(f) that alleged "misrepresentation[s] or omission[s] of . . . material fact[s] in connection with the purchase or sale of a covered security," it was removed to District Court pursuant to 15 U.S.C. § 78bb(f)(2).

2. See Zoren v. Genesis Energy, L.P., 195 F.Supp.2d 598, 606 (D.Del.2002).

3. See Zoren v. Genesis Energy L.P., C.A. No. 00–1005SLR, slip op. at 3, Robinson, J. (D.Del. May 15, 2002) (ORDER).

4. It must be noted at the outset that this court has grave reservations regarding whether it even has jurisdiction to hear the Second Chancery Action. Although Zoren did file a new lawsuit after the District Court dismissed his previous lawsuit, it appears that the claims he is asserting in the Second Chancery Action are substantially similar to the claims asserted in the First Chancery Action. The only material difference is that in the Second Chancery Action Zoren removed from his complaint claims directly related to the IPO and secondary offerings of Genesis. This may not be enough to escape the dictates of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").

SLUSA "mandates removal and then dismissal of any (1) covered class action; (2) based on state law; (3) alleging a misrepresentation or omission of a material fact or act of deception; (4) in connection with the purchase or sale of a covered security." Zoren, 195 F.Supp.2d at 603. Moreover, Congress clearly intended that SLUSA should be broadly applied. Id. In dismissing and refusing to remand to the state court Zoren's claims previously alleged under the First Chancery Action, the District Court held that Zoren's Amended Complaint in the First Chancery Action "unquestionably places the restructuring in the setting of an ongoing 'plan and scheme' to defraud and deceive." Id. at 605. The District Court further stated that "[u]nder the weight of his own allegations, it is clear that Zoren alleges a 'unitary scheme of fraud' that began before and continued after, the sale of units to the public. Rather than standing alone, the restructuring allegations merely concern the final step in a continuing plan to deceive." Id. at 606. Finally, in a subsequent order denying Zoren's motion to alter or amend judgment, the District Court held that "[a]lthough Zoren originally filed the first complaint correctly, wherein only state claims were raised in state court, he took a calculat-

motion to dismiss, Zoren filed an amended complaint ("Amended Complaint"). The defendants again moved to dismiss. The court held oral argument on June 13, 2003. This is the court's decision on that motion.

As the procedurally tortured history of this matter might suggest, Zoren's complaint does not present an ordinary claim for breach of fiduciary duty in connection with the Restructuring. In fact, the Amended Complaint makes little or no effort to attack the fairness of the terms of the Restructuring. Instead, as became clear during oral argument, Zoren's core allegations of misconduct relate to the 1996 public offering of limited partnership interests in Genesis. In other words, Zoren does not argue with the fact that the Restructuring was required in order to keep Genesis afloat. Nor does he take issue with the specific terms on which the Restructuring was accomplished. Rather, he is suing Salomon and the other defendants because, he alleges, the financial terms on which the Partnership was structured and sold to the public were never viable, caused a substantial decline in the market price from the public offering price and led, inevitably, to the Restructuring.

The great difficulty this theory creates for Zoren is that, at the time the Partnership was structured and sold, there was no relationship at all–either fiduciary or contractual–between Zoren (or any other member of the putative class of purchasers) and the defendants. Yet, the existence of some such relationship would seem to be a necessary predicate to the successful articulation of a claim under Delaware law. For this and other reasons more fully described in this opinion, the court concludes that Zoren's complaint does not state a claim for relief in relation to the substantive terms of the Restructuring. This opinion also addresses the disclosure issues raised in the Amended Complaint that relate to the proxy materials used to solicit votes in favor of the Restructuring.

## II.[5]

### A. The Parties

Defendant Genesis is a Delaware limited partnership that gathers and markets crude oil in North America. Genesis owns and operates its assets through an operating limited partnership, Genesis Crude Oil, L.P. (the "Operating Partnership"). The general partner of both Genesis and the Operating Partnership is defendant Genesis Energy, LLC, a Delaware limited liability company (the "General Partner"). Defendant Salomon wholly owns the General Partner. Further, the General Partner manages and operates the activities of Genesis through its board of directors, pursuant to a limited liability company agreement.

ed risk when amending five months later to include claims preempted by federal securities law. Considering this tactical maneuver ..., the court finds" that Zoren should not be entitled to amend his complaint to avoid the reach of SLUSA. *Zoren*, C.A. No. 00–1005SLR, at 3.

This court will nevertheless decide the merits of Zoren's Second Chancery Action because the District Court, in a footnote, stated that "[n]o federal jurisdiction existed over the original complaint [in the First Chancery Action], as the pleading did not allege misrepresentation or omissions in connection with the purchase or sale of a covered security. Grounds for removal arose with the filing of the amended complaint [in the First Chancery Action]...." *Zoren*, 195 F.Supp.2d at 606 n. 1. Zoren's complaint in the Second Chancery Action is more similar to his original complaint in the First Chancery Action than it is to his Amended Complaint in the First Chancery Action.

5. For the purpose of this motion to dismiss, the court accepts as true the well-pleaded factual allegations of the Amended Complaint.

The seven individual defendants, A. Richard Janiak, Mark J. Gorman, John P. von Berg, Michael A. Peak, Robert T. Moffett, Herbert I. Goodman, and J. Conley Stone, comprised the General Partner's board of directors during the time of the Restructuring (the "Director Defendants"). Gorman also serves as President and CEO of the General Partner; von Berg is an Executive Vice President of the General Partner in addition to his role as a director.

Defendant Salomon is a New York corporation registered to conduct business in Delaware. It is a broker and dealer in securities. Salomon served as the lead underwriter for Genesis's IPO in 1996 and the sole underwriter for a secondary offering in 1998.

Plaintiff Zoren is allegedly the owner of units of defendant Genesis. He brings this lawsuit on his own behalf and on behalf of all Genesis unitholders.

## B. *The 1996 Public Offering*

In September 1996, Basis Petroleum, Inc. ("Basis"), then a subsidiary of Salomon, and Howell Corp. formed the General Partner and caused the General Partner to form Genesis and the Operating Partnership. Basis and Howell owned 54% and 46%, respectively, of the General Partner. Genesis then sold 8,625,000 Common Units (the "Units"), at approximately $20 per Unit, in a public offering. The Units evidently carried a $.50 minimum quarterly dividend. The Units are listed and traded on the New York Stock Exchange ("NYSE") and trade under the symbol "GEL." In connection with the public offering, Salomon guaranteed the minimum quarterly dividend through December 31, 2001, subject to certain dollar limitations. Salomon also agreed to provide, for a fee,

transitional credit support for a period of three years.

Genesis contributed the net proceeds of the public offering to the Operating Partnership, which, in turn, acquired substantial operating assets from Basis and Howell for a total of $139 million. The Amended Complaint alleges that this transaction constituted a "sale of below water assets in exchange for inordinate consideration."[6] Basis and Howell also contributed additional assets to the Operating Partnership in exchange for 3,280,000 subordinated Units and a 0.61% General Partnership interest in the Operating Partnership.

## C. *The Restructuring Agreement*

From 1996 to 1999, Genesis's revenue and net income declined continuously, both as a result of a slowdown in the crude oil industry as a whole and for reasons related to its own business. As a result, in 1999, the Partnership reported that it would need to draw on Salomon's guarantee in order to meet the $.50 quarterly distribution requirement. Also, as a result of this poor performance, the Unit's trading price on the NYSE fell from $20.63 in 1996 to $8.68 in December 1999.

On May 10, 2000, Genesis announced the proposed Restructuring. This announcement was based on the findings of a Special Committee appointed by the General Partner, and was unanimously approved by the General Partner's board of directors. The proposed Restructuring was also subject to approval by a majority vote of the Units. On October 23, 2000, a definitive proxy statement was mailed to Unitholders. At a special meeting held on December 7, 2000, the proposed Restructuring received the requisite approval and was completed shortly thereafter.

---

**6.** Amended Compl. at ¶ 56(a).

The principal structural change made to the Partnership as a result of the Restructuring is that the minimum quarterly distribution was lowered from $0.50 to $0.20 per Unit. The other terms are as follows:

- Salomon contributed to the Partnership the remaining balance of its distribution support obligation, or $11.5 million;
- Genesis distributed this sum, *pro rata*, to all common Unitholders, net of the costs of the Restructuring;
- the General Partner gave up its share of this special distribution and any rights to other distributions that it might have in connection with the special distribution;
- all outstanding subordinated Units of the Operating Partnership were eliminated, increasing common Unitholders' combined ownership of Genesis from 80% to 98%;
- Salomon relinquished all $17.6 million of its additional limited partner interests;
- Salomon extended for one year under current terms the $300 million Master Credit Support Agreement to December 31, 2001; and
- the 125%, 140% and 165% thresholds for the General Partner to earn incentive distributions on a going forward basis were adjusted to reflect the lowering of Unit distributions from $.50 per quarter to $.20 per quarter.

### III.

■ Under Rule 12(b)(6), a motion to dismiss requires that the court accept as true all well-pleaded factual allegations in a complaint and that all reasonable inferences to be drawn from those facts are true.[7] However, "neither inferences nor conclusions of fact unsupported by allegations of specific facts ... are accepted as true."[8] A trial court need not "blindly accept as true all allegations, nor must it draw all inferences from them in plaintiffs' favor unless they are reasonable inferences."[9]

■ In order to properly state a claim upon which relief can be granted, the complaint must contain more than conclusory and generalized allegations.[10] The court must determine whether the plaintiff would be entitled to relief under any set of facts that might be shown to exist consistent with the well-pleaded allegations in the complaint.[11]

### IV.

#### A. *Zoren Fails To State A Claim Upon Which Relief Can Be Granted*

Zoren attempts to allege that the Director Defendants and Salomon breached their fiduciary duties to Unitholders in connection with the Restructuring. His Amended Complaint claims that the Restructuring was a self-dealing transaction that did not comport with either the fair process or the fair price elements of the standard of entire fairness.[12] The Amended Complaint goes on to summarize the wrongful nature of the defendants' conduct in the following conclusory terms:

This conduct by the defendants has been wrongful, unfair and harmful to the pub-

---

7. *Grobow v. Perot*, 539 A.2d 180, 187 & n. 6 (Del.1988).

8. *Id.*

9. *Id.*

10. *Loudon v. Archer–Daniels–Midland Co.*, 700 A.2d 135, 140 (Del.1997).

11. *In re Tri–Star Pictures, Inc. Litig.*, 634 A.2d 319, 326 (Del.1993).

12. Amended Compl. at ¶¶ 60–61.

lic Unitholders of Genesis and is an attempt by [Salomon] and its affiliates to aggrandize their personal positions, interests and finances at the expense of, and to the detriment of, the public Unitholders of Genesis. This conduct will deny members of the Class their right to share appropriately in the true value of the Company's assets, future earnings and profitable businesses of Genesis and ... deny them the promised patronage and corporate/financial support of [Salomon].[13]

The defendants' motion to dismiss argues, on a number of grounds, that Zoren's Amended Complaint fails to state a claim for breach of fiduciary duty. Most pertinently, they argue, and the court agrees, that the Amended Complaint does not come close to articulating a theory or basis for finding that the Restructuring is unfair to Zoren or the class of Unitholders he purports to represent or, even, that the Restructuring is properly the subject of an entire fairness analysis.

■■■ Undoubtedly, a corporate general partner and the directors of that general partner owe a fiduciary duty of loyalty to a limited partnership and its limited partners.[14] Nevertheless, the corporate general partner and its directors are entitled to the protections afforded corporate directors, including a presumption that their actions are protected from judicial oversight by the business judgment rule. "[T]he business judgment rule generally protects the actions of general partners, affording them a presumption that they acted on an informed basis and in the honest belief that they acted in the best interests of the partnership and the limited

partners."[15] Zoren has the burden of rebutting this presumption and must, as a threshold matter, plead sufficient facts showing that Salomon or the General Partner appeared on both sides of the transaction or derived a personal benefit from a transaction in the sense of self-dealing.[16]

■■ The Amended Complaint fails to meet this burden because it only makes the most conclusory claims about Salomon's or the Director Defendants' interest in the Restructuring. This point is not a narrow or academic one. The terms of the Restructuring, detailed above, do not easily lend themselves to a "self-interested transaction" analysis. As can be seen, Salomon agreed to fulfill all of its contractual duties to Genesis (and even extended by a year its credit support agreement). This required Salomon to pay $11.5 million to Genesis. Salomon also gave up, without payment, all of its limited partnership and subordinated limited partnership interests in Genesis, as well as any right it had to receive a share of the special distribution made in connection with the Restructuring. Salomon is not claimed to have received anything in return except a resetting of the General Partner's incentive compensation hurdles to make them correspond with reality as reflected in the lower minimum quarterly distribution. Nowhere in the Amended Complaint is this minor element of the Restructuring alleged to be unfair to Zoren or the class.

At oral argument, the court pressed Zoren's counsel to explain the duty of loyalty issue in this case, The answer, stated in different ways at different points in the argument, was three-fold. First, Zoren's

---

13. *Id.* at ¶ 65.

14. *In re Boston Celtics Ltd. P'ship S'holders Litig.*, 1999 WL 641902, at *4 (Del.Ch. Aug. 6 1999).

15. *Id.* at *5.

16. *Seaford Funding L.P. v. M & M Assocs. II, L.P.*, 672 A.2d 66, 70 (Del.Ch.1995).

counsel argued that the Restructuring will permit Salomon to sell the General Partner and, therefore, Salomon is "not going to provide the financial support anymore."[17] The legal shortcoming of this allegation as a claim challenging the fairness of the Restructuring is simple: there is no well-pleaded allegation of fact in the complaint to support an inference that Salomon had any legal or equitable duty to provide financial support to Genesis beyond the contractual terms that it entirely satisfied in the Restructuring. Thus, the fact that the Restructuring (by placing the Partnership's financial condition on a more even and sustainable keel) may permit Salomon to sell the General Partner to some other entity can hardly form the basis for a litigable claim for breach of the duty of loyalty.

Second, the Amended Complaint asserts (and Zoren's counsel reiterated at argument) claims that relate either to the formation of the Partnership or to the management of that enterprise from 1996 until the Restructuring. For example, the Amended Complaint alleges that Salomon "has improperly and illegally benefited at the expense of the Common Unitholders" by the "sale of below water assets to the Partnership in exchange for inordinate consideration," by its "failure to maximize value to the Common Unitholders while taking out fees," and by "bailing out of the Partnership and leaving behind the wreckage" caused by its mismanagement.[18] None of these allegations state of claim for breach of the duty of loyalty in connection with the Restructuring. The first matter alleged relates to the 1996 use of proceeds of the IPO to purchase assets from Salomon and Howell. That claim has nothing to do with the Restructuring and, in any case, is surely barred by operation of the judgment of the District Court.[19] The second claim is one for mismanagement that could be brought derivatively on behalf of the enterprise. Zoren, however, has not alleged any derivative claims and his counsel specifically eschewed any intention of doing so.[20] The last of these "claims" merely characterizes the Restructuring in unflattering terms and does not state a claim for relief.

Third, although not clearly alleged in his Amended Complaint, Zoren seems to complain that the Restructuring should have happened years earlier, before the financial structure of the Partnership (in particular, the $.50 minimum quarterly dividend) sapped the enterprise of resources. As nearly as can be understood, the theory of this claim is that Salomon delayed the Restructuring in order to avoid alerting the Common Unitholders to the fact that the Partnership could not continue to support the $.50 minimum quarterly dividend until the limitations period governing claims under the federal securities laws had elapsed. This claim, too, is most easily understood either as one for mismanagement that must be (but is not) brought derivatively, or merely as another incarnation of the claims related to the 1996 initial public offering and is barred by the judgment of the District Court.[21] It is not a challenge to the fairness of the terms of the Restructuring as it was proposed and adopted in 2000.

For all these reasons, the court concludes that the Amended Complaint does not state a claim upon which relief can be

---

17. June 13, 2003 Tr. at 34, II. 17–18.

18. Amended Compl. at ¶ 56.

19. *See* note 4, *supra*.

20. June 13, 2003 Tr. at 44, II. 12–17.

21. *See* note 4, *supra*.

granted in regard to the substance of the Restructuring.

## B.  *The Disclosure Allegations*

The Amended Complaint also attempts to allege claims for breach of the duty of disclosure.  Certain of these allegations improperly demand that the defendants either engage in "self-flagellation" or adopt plaintiff's own characterization of facts.  For example, paragraph 44 of the Amended Complaint attacks the defendants' public statements to the effect that the Restructuring will afford the Partnership a "fresh start," alleging, instead, that the real purpose of the Restructuring is to allow Salomon to "bail out of its position in Genesis."  Other allegations are directed at the proxy materials sent out in connection with the vote on the Restructuring.

■ Although a few of the disclosure claims have, at least, colorable merit, the court concludes that they all must be dismissed because no possible relief is available to Zoren or the putative class with respect to them.[22]  To begin with, it is obviously too late to provide equitable or injunctive relief in the form of corrective or supplemental disclosure in connection with the vote taken in December 2000.  Zoren knew of all his disclosure claims well before the vote was held to approve the Restructuring, Yet, he failed to present those claims at that time.  Instead, Zoren now proposes that the court consider these claims years after the Restructuring was concluded.  Furthermore, it is just as clear that the other possible form of equitable relief–an order of rescission–is also impracticable in this setting.[23]  Indeed, the Amended Complaint does not even ask the court to rescind the Restructuring.

The question raised by Zoren's failure to seek relief at a time when equity could have intervened to assure proper disclosure is whether any form of monetary relief could be awarded at trial years after

**22.** Most of the allegations of disclosure violations are found in paragraphs 55(a) through (h) of the Amended Complaint.  Paragraphs 55(a), (b)(c), (e), (f), and (h) all are deficient for various reasons.  Paragraph 55(d) alleges that the proxy statement failed to disclose that the financial advisor hired to represent the special committee had previously represented Salomon and Howell "in their attempts to sell their General Partner interest in Genesis, for which it was to receive contingent compensation."  At oral argument, Zoren's counsel stated that the allegation that this financial advisor had actually represented Salomon and Howell was a reasonable inference to be drawn from the allegation of fact found in paragraph 46 of the Amended Complaint to the effect that the same advisor "had previously been solicited" to represent the General Partners.  The court agrees that, in the context of this motion under Rule 12(b)(6), it is reasonable to draw such that inference.

Paragraph 55(g) alleges that the proxy statement failed to disclose the identities of the two members of the special committee who recommended the Restructuring.  This is, of course, a surprising omission and one that would raise at least a litigable claim were relief possible.  The court observes, however, that the Amended Complaint itself, in another paragraph, identifies the two directors by name.  Thus, it is likely that the information was available in the "total mix" known or available to Unitholders in connection with the vote.  Nevertheless, the materiality of the omission from the proxy statement would be a matter to resolve on a complete factual record.

**23.** As discussed above, the Restructuring entailed a special cash distribution paid out early in 2001 to the Common Unitholders.  In addition, the Units have continuously traded on the NYSE during the 31 months since the Restructuring and, undoubtedly, many of the current holders acquired their Units since the Restructuring was accomplished.  Both of these factors would make rescission impractical.  Finally, it is inconceivable that the court would order rescission where, as is true here, the complaint does not actually challenge the substantive fairness of the transaction that was approved by the stockholders.

the vote was taken. Many disclosure claims will support only equitable or injunctive relief.[24] In this case, as discussed above, the Amended Complaint does not state a claim for relief as to the fairness of the economic terms of the Restructuring. Thus, there is no possibility that the court would award actual damages to Zoren or the class because they suffered no economic injury as a result of the vote to approve the Restructuring.[25] Similarly, the disclosure violations alleged here could not result even in an award of nominal damages to the class of Unitholders at the date of the Restructuring, since there is no viable claim that the Restructuring "caused any impairment to the economic or voting rights of the Unitholders."[26]

For these reasons, the disclosure claims alleged in the Amended Complaint fail to state a claim upon which relief can be granted and should be dismissed.[27]

## V.

For the foregoing reasons, the defendants' motion to dismiss is **GRANTED,** and the Amended Complaint is dismissed with prejudice in accordance with Rule 15(aaa) of the Court of Chancery Rules. **IT IS SO ORDERED.**

---

**24.** *Loudon,* 700 A.2d at 141; *In Re Triarc Companies, Inc.,* 791 A.2d 872, 876–78 (Del. Ch.2001).

**25.** *Loudon,* 700 A.2d. at 141–42 (Del.1997).

**26.** *Id.* at 142.

**27.** Ch. Ct. R. 12(b)(6).