**Michelle GRABOW, on behalf of herself and others similarly situated, Plaintiff,**

v.

**PRICEWATERHOUSECOOPERS LLP, a Delaware limited liability partnership, Defendant.**

**No. 04–CV–0046–EA (M).**

United States District Court, N.D. Oklahoma.

April 5, 2004.

Ray Thompson Hillis, David James Schaffer, Titus Hillis & Reynolds PC, Tulsa, OK, for Michelle Grabow, on behalf of herself and others similarly situated, plaintiff.

Jack LeDrew Neville, Jr., Hartzog Conger Cason & Neville, Russell A. Cook, Hartzog Conger Cason & Neville, Oklahoma City, OK, Michael R. Young, John R. Oller, Scott S. Rose, Willkie Farr & Gallagher, New York City, for Pricewaterhousecoopers, LLP, a Delaware limited liability partnership, defendant.

### ORDER

EAGAN, District Judge.

This removed action comes before the Court pursuant to plaintiff's Motion to Remand (Dkt. # 5) filed January 28, 2004. As set forth in the Class Action Petition filed in state court, plaintiff Michelle Grabow, on behalf of certain investors and shareholders in the Janus Family of Funds ("Funds"), brought this action against PricewaterhouseCoopers LLP ("PWC"), a certified public accounting firm. The claims arise from PWC's alleged professional negligence in connection with its audits of the Funds. In particular, plaintiff alleges that defendant failed to discover and report that the Funds were permitting late trades by certain investors, *i.e.,* "market timers," and failed to take appropriate action to discourage, prevent, or stop market timing. Plaintiff asserts three state common law claims: negligence, negligent misrepresentation, and aiding and abetting a breach of fiduciary duty. Defendant removed to federal court on the basis of federal question jurisdiction. Specifically, defendant asserts that this action is removable pursuant to the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§ 77p(b), (c), 78bb(f)(1), (2).

## I.

The removal statutes require a case to be remanded to state court if at any time before final judgment it appears the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). Federal courts are courts of limited jurisdiction. The party seeking to invoke the jurisdiction of the federal courts has the burden of proving the existence of jurisdiction, and the burden of proof in removal cases is on the defendant. *See McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *see also Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921). The removing defendant bears the burden of establishing federal court jurisdiction at the time of removal, and not by supplemental submission. *Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir. 1995); *see Herber v. Wal–Mart Stores,* 886 F.Supp. 19, 20 (D.Wyo.1995) (holding that the jurisdictional allegation is determined as of the time of the filing of the notice of removal).

The two portions of the SLUSA cited by defendant in support of its Notice of Removal provide:

(b) Class action limitations

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—

(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or

(2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

(c) Removal of covered class actions

Any covered class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b).

15 U.S.C. §§ 77p(b), (c).

(f) Limitations on remedies

(1) Class action limitations

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—

(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

(2) Removal of covered class actions

Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

15 U.S.C. § 78bb(1),(2). For purposes of this motion, there is no dispute that this is a "covered class action," that the petition is based on state law claims, or that it involves allegations as to "covered" securities. The issue is whether the allegations involve misrepresentations "in connection with the purchase or sale" of a covered security.

██ Since SLUSA does not define the term "in connection with the purchase or sale" of a covered security, courts interpreting the term in SLUSA have consistently relied upon decisions interpreting the same term in section 10(b) of the Secu-

rities Exchange Act of 1934 (15 U.S.C. § 78j) and Securities Exchange Commission Rule 10b–5 (17 C.F.R. § 240.10b–5). *See, e.g., Behlen v. Merrill Lynch,* 311 F.3d 1087, 1093 (11th Cir.2002). Where no purchase or sale of a security has been transacted by the claimant who seeks damages under section 10(b) or Rule 10b–5, the "in connection with" requirement is not met. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 749, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Hence, SLUSA does not preempt a state law claim where the plaintiff does not allege that defendant's misrepresentations caused him or her to buy or sell a security. *See, e.g., Meyer v. Putnam Int'l Voyager Fund,* 220 F.R.D. 127 (D.Mass.2004); *Dacey v. Morgan Stanley Dean Witter & Co.,* 263 F.Supp.2d 706, 711 (S.D.N.Y.2003); *Shaev v. Claflin,* No. C 01–0009 MJJ, 2001 WL 548567 (N.D.Cal. May 17, 2001); *Gordon v. Buntrock,* No. 00 CV 303, 2000 WL 556763 (N.D.Ill. April 28, 2000). "SLUSA does not apply to claims dealing *solely* with the retention of securities, rather than with purchase or sale." *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 292 F.3d 1334, 1345 (11th Cir.2002) (emphasis in original).

## II.

Plaintiff's claims, by their very nature, relate solely to injuries arising from the retention of securities, and not from the purchase or sale. There is no allegation that PWC's audits caused plaintiff to buy or sell her shares; the sole allegation is that plaintiff continued to hold her shares based upon PWC's misrepresentations or omissions as to the market timing permitted by The Funds. Plaintiff defined the putative class as "all shareholders in the Janus Family of Funds who owned shares at any time from January 1, 2000, to the present and who were harmed or damaged by PWC's negligence as described herein." Class Action Petition, ¶ 9 (Notice of Removal, Dkt. # 1, Ex. A).[1] Other paragraphs in the petition reference the class as those who "are or were shareholders of the respective Funds" (¶ 14) and "buy and hold investors" (¶¶ 20, 28). Another paragraph references the alleged injury as "long term shareholder losses" (¶ 43). The petition makes it clear that the alleged losses are losses to the Funds realized by those shareholders who held their securities based upon the alleged misrepresentations or omissions, not those shareholders who bought and sold as a result of PWC's actions. Thus, while plaintiff's definition of the putative class does not explicitly exclude investors who bought or sold covered securities during the time period relevant to the litigation, *e.g., Gutierrez v. Deloitte & Touche, L.L.P.,* 147 F.Supp.2d 584, 593 (W.D.Tex. 2001), there is no allegation in the petition as to any fraud or loss arising in connection with the purchase or sale of a security.

Defendant argues that the petition's reference to certain statements in the Funds' prospectuses and other public documents is sufficient to bring the plaintiff's allegations within SLUSA's ambit. In particular, defendant directs the Court's attention to paragraph 31 of the petition which references a policy statement in the Funds' prospectuses as an example of the Funds' repeated assurances to investors that market timing would not be tolerated. Paragraph 31 also alleges that "PWC owed a duty to the investors of the shares of the mutual funds to test for and detect any of

---

1. Although plaintiff amended her petition after removal to specifically exclude claims relating to the purchase or sale of securities (*see* Dkt. # 2, ¶¶ 1, 9), the Court must determine subject matter jurisdiction at the time of removal. *See, e.g., Laughlin,* 50 F.3d at 873; *Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484, 1488 (10th Cir.1991).

this excessive trading or market timing as per the dictates of the prospectuses and other public documents filed by the mutual fund and signed off on by PWC." Class Action Petition, ¶ 31 (Notice of Removal, Dkt. # 1, Ex. A). Defendant further argues that paragraphs 53, 54, 57, and 58 of the petition incorporate the allegations of paragraph 31.

Defendant's argument might succeed if plaintiffs had sued the Funds based upon the policy statement provided by the Funds in the prospectus. It fails because plaintiffs have sued PWC not based on the prospectus, but based on information that PWC provided, or failed to provide, as a result of its audits. Thus, defendant's reliance upon *Professional Management Associates, Inc. Employees' Profit Sharing Plan v. KPMG LLP*, 335 F.3d 800 (8th Cir.2003) (hereinafter referenced as "*PMA*"), and *Zoren v. Genesis Energy, L.P.*, 195 F.Supp.2d 598 (D.Del.2002), is misplaced. The *PMA* case involved state law claims of negligence, negligent misrepresentation and aiding and abetting breach of fiduciary duty in connection with an outside auditor's audits of Green Tree Financial corporation. The *PMA* court wrote that "SLUSA governs when a complaint 'can reasonably be read as alleging a ... purchase of a covered security made in reliance on the allegedly faulty information provided [to the plaintiff] and to putative class members by [the defendant].'" 335 F.3d at 803. The *PMA* complaint alleged: "As a direct result of Green Tree's false and misleading financial statement, and KPMG's false reports thereon, [PMA] and class members ...*bought* and retained their Green Tree shares, and did not sell their shares, in the belief that said shares were properly valued in the market ...." *Id.* at 802 (emphasis added). Thus, the complaint could "reasonably be read" to require SLUSA preemption. The petition in this matter contains no reference to class members who bought securities.

Similarly, the *Zoren* case involved allegations of fraud, misrepresentation and deception in public offerings relied upon by the investor plaintiffs. 195 F.Supp.2d at 603–04. Public offerings, by their very nature, involve the purchase of securities. Plaintiff in this matter has not alleged that the Funds misrepresented anything in the prospectus; she has simply alleged that the Funds acted in contravention of the statements made in the prospectus, and defendant PWC failed to make that known to the shareholders. In other words, plaintiff's damages are not based upon any prospectus statement made by the Funds; they are based on defendant's failure to discover and report the market timing permitted by the Funds in contravention of the statements in the prospectus and other documents.

In a related argument, defendant contends that the plaintiff's broad definition of the class necessarily includes shareholders who bought or sold shares after January 1, 2000. Yet, as the court in *Shaev* recognized, the fact that some shareholders may have purchased securities in the Funds after the class definition date does not link the alleged misleading conduct with the purchases. 2001 WL 548567 at *6. There is no allegation that purchasers bought their securities based upon any representations or omissions made by PWC. This is not a "mixed" claim involving purchasers or sellers as well as holders of securities. *See Riley*, 292 F.3d at 1345; *Cape Ann Investors LLC v. Lepone*, 296 F.Supp.2d 4 (D.Mass.2003); *Hardy v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 189 F.Supp.2d 14, 19 (S.D.N.Y.2001).

█ Finally, defendant argues that, since the allegations involve purchases and sales by market timers, the "in connection with" requirement of SLUSA is met by the third party purchases. However, defendant cites no authority in support of this

proposition, and there is authority to the contrary. *See Meyer,* at 130. It is too much of a stretch to say that the "in connection with" requirement is met because someone other than the plaintiff purchased or sold a security. It is the injured party's decision to purchase or sell securities in reliance upon a misrepresentation or omission—not the purchase or sale by a disinterested third party—which gives rise to a SLUSA preemption.

Several cases point out that Congress passed SLUSA in order to close a loophole in the 1995 Private Securities Litigation Reform Act ("PSLRA"). *E.g., Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 332 F.3d 116, 123 (2d Cir.2003). The loophole allowed plaintiffs to circumvent the PSLRA's more stringent procedural and substantive requirements for private securities actions in federal courts by alleging state law causes of action in state courts. *Id.* However, as at least one court has recognized, Congress was aware of the Supreme Court's interpretation of § 10(b) of the 1934 Act; nevertheless, Congress did not expand the scope of actions covered by SLUSA to holders of securities in addition to sellers and purchasers. *See Gordon,* 2000 WL 556763, at *4. Although this Court recognizes that SLUSA is to be broadly applied, *e.g., Zoren,* 195 F.Supp.2d at 603, its language cannot be stretched to encompass the interpretation urged by defendant. The Court does not read the petition to include any allegation of harm caused by misrepresentations or omission in connection with the purchase or sale of a covered security.

### III.

Accordingly, the Motion to Remand (Dkt. # 5) is **GRANTED**. The Court hereby orders the Court Clerk to remand this case to the District Court in and for Tulsa County.